THE SCHOOL DISTRICT OF McCOOK, IN THE COUNTY OF RED WILLOW, NEBRASKA, APPELLANT, v. THE CITY OF McCOOK, NEBRASKA, APPELLEE.

81 N. W. 2d 224

Filed February 22, 1957. No. 34077.

818

*Russell & Colfer* and *Mothersead, Wright & Simmons,* for appellant.

*Stanley R. Scott,* for appellee.

*Jack M. Pace, Wayne R. Douce,* and *Edward F. Fogarty,* amicus curiae.

Heard before CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a declaratory judgment brought by the School District of McCook against the City of McCook for a determination that the money paid after a receipt of a violation notice under the parking-meter ordinances of the city of McCook are fines, penalties, and license moneys within the meaning of Article VII, section 5, of the Constitution of Nebraska. The trial

court found that such moneys were not within such constitutional provision and dismissed the action. The plaintiff has appealed.

The plaintiff is a duly organized and existing school district by virtue of Chapter 79, article 8, R. R. S. 1943, and will hereafter be referred to as the school district. The defendant is a city of the first class duly organized and existing under the laws of this state and will hereafter be referred to as the city. On January 13, 1947, the city first adopted a parking-meter ordinance which stated in part that it was for the purpose of defraying the cost of the city of regulating, supervising, and policing the exercise of the privilege of parking vehicles upon streets designated by the council. The ordinance imposed a fee for the parking of a motor vehicle on such streets during certain hours and provided that the operator, at the time of parking, deposit a coin in the meter. The parking space could then be lawfully occupied by said vehicle during the period of time allotted, according to the denomination of the coin deposited, as indicated on the meter. The ordinance also provided that it was unlawful for any motor vehicle to occupy a parking space where the meter showed it was illegally in use. The duty was placed upon the chief of police to keep a record of all violations and to attach a notice to unlawfully parked vehicles instructing the operator to report at the police station. There was no provision as to the procedure at the police station. The chief of police was charged with the collection of money from the meters for delivery to the city treasurer to be placed in a special parking-meter fund. The ordinance authorized the purchase of meters from this fund and that such portion of the fund as was deemed necessary could be used for the proper regulation, control, and inspection of traffic upon the public streets and to cover the cost of supervising, regulating, and inspecting the parking of vehicles in said parking zones, including the placing and maintaining of lines or marks in the parking-meter

areas. The penalty for the violation of the ordinance was a fine in any sum not exceeding $100 and commitment to the city jail until the fine and costs were paid.

On February 10, 1947, a supplemental ordinance was passed which provided that when a violator of the parking ordinance fails to appear within 3 days, a complaint shall be filed and a warrant issued. It also provided that any violator appearing within 3 days who desired to plead guilty could do so and pay $1 to cover the costs and expenses of administration.

It appears that on March 14, 1951, the city council, without ordinance, adopted the following: "It was further agreed to increase parking fines from five cents to twenty-five cents if paid within 24 hours, and $1.00 per ticket after 24 hours have elapsed, to be effective June 1, 1951." There is no evidence in the record as to the legal basis for the five cents collected prior to June 1, 1951.

On December 21, 1953, an amendatory ordinance was enacted which provided for the first time what should be done when the notice of violation was received by the operator. It provided that if the violator appeared at the police station within 24 hours after receiving the police tag, he should pay 25 cents, 10 cents of the amount to be deemed as payment of the parking privilege not previously paid and 15 cents as payment of operation and administrative expenses. If the violator appeared at the police station after 24 hours but within 72 hours, he should pay $1.25, 10 cents for the unpaid parking privilege and the balance for operation and administrative expenses. A failure to appear within 72 hours subjected the violator to a complaint and warrant of arrest for a violation of the ordinance.

The legality of the ordinances and other actions of the council are not here in question. The amounts collected from the several sources since 1947 are shown by the record. We do not deem it necessary to list them here. The record shows that since the enactment of the

first parking-meter ordinance but four complaints were filed and they were dismissed upon payment of the above charges.

The question presented is whether the moneys received by the city after a receipt of a violation notice under the parking-meter ordinances are within the provisions of Article VII, section 5, of the Constitution and therefore the property of the school district. The constitutional provision provides: "All fines, penalties, and license moneys, arising under the general laws of the state, shall belong and be paid over to the counties respectively, where the same may be levied or imposed, and all fines, penalties and license moneys arising under the rules, by-laws, or ordinances of cities, villages, towns, precincts, or other municipal subdivision less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of the common schools in the respective sub-divisions where the same may accrue." This provision is self-executing and if the moneys involved are fines, penalties, or license moneys within its meaning, a judgment awarding them to the school district would be required. School District of the City of Omaha v. Adams, 147 Neb. 1060, 26 N. W. 2d 24.

We point out that public highways and streets are primarily for public travel. A reasonable use for such purpose includes temporary and reasonable stops as lawful incidents of travel. The growth of motor vehicle traffic has created difficult problems, particularly in areas where streets were laid out and constructed before the automobile became a common means of transportation. The need for regulation of motor vehicle traffic became a necessity. While we have no doubt that stops of reasonable length which do not interfere with the reasonable use of streets are incidents of the use of such streets, when such use overtaxes their capacity, the state in the exercise of its police power may

adopt reasonable regulations for the purpose of meeting the situation. We are in accord with the view that a city has the same right to regulate parking that it has to limit the speed of automobiles and to install traffic control signals, if the regulatory ordinance is not arbitrary, oppressive, unreasonable, or discriminatory. City of Hutchinson v. Harrison, 173 Kan. 18, 244 P. 2d 222; Andrews v. City of Marion, 221 Ind. 422, 47 N. E. 2d 968.

The city has no right to charge for the use of public streets. It may not lease nor rent the area within a public street nor charge a toll for the use thereof. Burlington & M. R. R. Co. v. Reinhackle, 15 Neb. 279, 18 N. W. 69, 48 Am. R. 342; Michelsen v. Dwyer, 158 Neb. 427, 63 N. W. 2d 513. See, also, William Laubach & Sons v. City of Easton, 347 Pa. 542, 32 A. 2d 881; Britt v. City of Wilmington, 236 N. C. 446, 73 S. E. 2d 289.

The general police power delegated to a municipality authorizes it to regulate its streets which, we think, would include the use of parking meters. Kimmel v. City of Spokane, 7 Wash. 2d 372, 109 P. 2d 1069; City of Bloomington v. Wirrick, 381 Ill. 347, 45 N. E. 2d 852. The legality of an ordinance providing for the use of parking meters is dependent upon the ordinary rules governing police regulations. Such an ordinance must not be arbitrary, oppressive, unreasonable, or discriminatory at the time of its enactment. It must be reasonably calculated to accomplish the purpose of regulation. If it is in fact a revenue enactment as distinguished from a purely regulatory measure it is clearly unconstitutional. Rhodes, Inc. v. City of Raleigh, 217 N. C. 627, 9 S. E. 2d 389, 130 A. L. R. 311. We necessarily conclude that a city of the first class is authorized by section 16-246, R. R. S. 1943, to enact a proper ordinance providing for parking meters as a regulatory measure. Wilhoit v. City of Springfield, 237 Mo. App. 775, 171 S. W. 2d 95. The constitutionality of the ordinances and actions of the city in the present case is not raised. We shall not, therefore, deal with the subject further.

We must assume the validity of the ordinances and actions of the city in dealing with the subject. No question is here raised as to the moneys collected from the meters except as it incidentally bears upon the nature of the moneys collected after a notice of violation has been appended to a motor vehicle for overparking. For the purposes of this suit, therefore, we shall treat the moneys collected as moneys constituting an integral part of the regulation, as provided in the ordinances enacted.

In its first cause of action the school district alleges that from February 10, 1947, to December 21, 1953, the city collected $1 from each violator whose motor vehicle was tagged for overparking if the violator appeared at the police station within 3 days, otherwise a complaint was filed. From March 1, 1947, until March 1, 1948, the city collected 5 cents for each violation if it was paid within 3 days. After March 1, 1948, the city collected 25 cents for a violation if the violator tendered it within 24 hours. It is the contention of the school district that these collections were fines, penalties, or license moneys within the meaning of Article VII, section 5, of the Constitution.

As we have heretofore said, the coins deposited in a parking meter under the provisions of the ordinance before us were an integral part of the traffic regulation. They are not deposited as rent or a toll for the use of parking space. Their purpose was a regulatory device to discourage and prevent overtime parking and thereby clear congested areas of motor vehicles, permit the free movement of traffic, and correct abuses of the parking privilege. Board of Commissioners of the City of Newark v. Local Government Board, 133 N. J. L. 513, 45 A. 2d 139. It is apparent, therefore, that the collection of the 5-cent and 25-cent charges were no part of the regulatory purpose of the ordinance, but were in fact penalties paid by the violator to purge himself of the charge of violating the overparking provisions of the

ordinance. The placing of coins in a parking meter is an integral part of the regulation. The payment of money after the violation within a fixed time to avoid a prosecution under the ordinance is penal in character. The differences are basic and controlling. The payment of the moneys here involved is in no sense remedial or compensatory to the city. Nothing is owed the city as rent or as a toll for the use of the parking space. The payment of money into parking meters is not compensation but regulation to discourage overtime parking. Opinion of the Justices, 94 N. H. 501, 51 A. 2d 836. The money here involved is no different than if it had been collected to purge oneself from overparking in violation of a police regulation where parking meters were not used.

The case of School District of the City of Omaha v. Adams, *supra*, is clearly distinguishable. That case involved the nature of a 50 percent penalty collected for failure to list intangible property for taxation. While it is punitive as to the wrongdoer, we held it to be compensatory to the state and the subdivisions thereof entitled to share in the tax for the delay caused by the failure to list for assessment purposes and the consequent derangement of tax records and collection processes. We said, also, that the more strict definition of "penalty" was intended, that is, the pecuniary punishment inflicted by a law, ordinance, or police regulation for its violation. The contention that the constitutional provision applies only to exactions resulting from a criminal proceeding is not tenable. The provision specifically provides that it should apply to rules, by-laws, or ordinances. It applies not only to fines and penalties assessed in criminal prosecutions, but also to fines and penalties that are assessed under rules, by-laws, and ordinances of cities which are criminal in character but collectible by civil actions. Unless such construction was intended, the last part of the first sentence of the constitutional provision would be wholly superfluous.

In the instant case, the moneys were paid as a punishment for violating a police regulation which was in no manner compensatory to the city. It was clearly a penalty within the meaning of the constitutional provision.

The second cause of action alleges that on December 21, 1953, the city by ordinance provided that after a motor vehicle was tagged for overparking, the violator could avoid the filing of a complaint by paying 25 cents within 24 hours or $1.25 within 72 hours. The school district contends that the amounts so collected are fines or penalties within Article VII, section 5, of the Constitution. For the reasons stated in disposing of the first cause of action, we hold the amounts collected under the foregoing provisions of the ordinance to be penalties within the constitutional provision.

The ordinance of December 21, 1953, also provided that 10 cents of each 25 cents or $1.25 collected shall be deemed to be in payment of the parking privilege not previously paid for, and the balance shall be deemed in payment of operation and administration expenses. The Constitution having provided that such penalties shall be paid over to the common schools, the city may not divert them to any other purpose. The fact that the ordinance of the city may designate a portion as compensatory and the balance for the cost of operation and administration cannot have the effect of changing the true character of these funds. If they be penalties under the constitutional provision, as they are, the city cannot change their character by giving them a name inconsistent with their true character. Since the Constitution is the supreme law of the state, any attempt by a city to make a distribution of funds contrary to its provisions is ineffectual and void.

We think the trial court was in error in holding that the school district had no right to the funds herein described. The judgment of the district court is reversed and the cause remanded with directions to the trial

court to enter a declaratory judgment in accordance with this opinion and such other relief as equity may require: REVERSED AND REMANDED WITH DIRECTIONS.

CHAPPELL, J., participating on briefs.