JOHN W. DECAMP, INDIVIDUALLY AND ON BEHALF OF ALL OTHER TAXPAYERS SIMILARLY SITUATED, APPELLANT, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

277 N. W. 2d 83

Filed March 27, 1979. No. 41901.

Herbert J. Friedman, Friedman Law Offices, for appellant.

Charles D. Humble, City Attorney, and William G. Blake, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and SPENCER, Retired Justice.

CLINTON, J.

This is an action begun in the District Court for Lancaster County by plaintiff, a taxpayer of the City of Lincoln and of School District No. 1, City of Lincoln, individually and on behalf of other taxpayers similarly situated. Plaintiff urges that the part of the City's ordinance, section 10.68.040, relating to court costs is in violation of Article VII, section 5, of the Constitution of Nebraska, and seeks an accounting of funds designated in the ordinance as "court costs." The action is brought for the benefit of the above-mentioned school district. The defendant City of Lincoln does not challenge the standing of the plaintiff to bring this action. The District Court held the ordinance constitutional. We affirm.

Article VII, section 5, of the Constitution of Nebraska, insofar as pertinent to this action, provides: "All fines, penalties, and license money, arising under the general laws of the state, . . . shall belong and be paid over to the counties respectively, where the same may be levied or imposed, and all fines, penalties, and license money arising under the rules, bylaws, or ordinances of cities, villages, precincts, or other municipal subdivision less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license money shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue, . . . ."

Chapter 10.68 of the Lincoln municipal code establishes "a violations bureau" under the jurisdiction of the municipal court. The ordinance providing that costs in cases processed by a violations bureau shall be set by ordinance was enacted pursuant to the authority of section 26-112 (2), R. R. S. 1943, as amended in 1967. That statute, insofar as is pertinent, provides as follows: "The clerk of the municipal court shall charge and receive the following fees: . . . (2) In criminal matters: . . . six dollars; except

that in all cases handled by a violations bureau established by the local governing body by ordinance, under the jurisdiction of the municipal court, the court cost shall be as set forth in such ordinance; . . . ."

Certain sections of the Lincoln municipal code, chapter 10.29, details of which the parties apparently did not consider significant, define regulations and prohibitions relative to the parking of motor vehicles on city streets. The ordinance which is attacked, section 10.68.040, establishes the fines and penalties for violations of the various parking ordinances and regulations and it provides that any person accused of a violation may "appear before the violations bureau of the Municipal Court, and waive arraignment and right to a hearing and enter a plea of guilty by a payment . . . in those complaints involving a parking ordinance or regulation."

Fines of 5 cents if paid within 5 days of receipt of the police tag and $1.05 if paid within 5 to 15 days are then prescribed in the ordinance. These two fines, it is inferable, are applicable to parking meter violations; for other violations, the fines are graduated from $4.05 to $29.05, which amounts include added penalties for delay in payment. In the case of every fine from 5 cents to $29.05, the ordinance provides that court costs of 95 cents shall be assessed. Although we do not regard it as significant, we note the fact that the notice portion of the uniform citation and complaint (the police tag) does not separate fine and costs. For example, the 5-cent fine and costs of 95 cents for a parking meter violation, if paid within the 5-day period, are listed on the citation simply as $1.

The cause was submitted to the trial court on a stipulated statement of facts, and that stipulation, together with the proceedings showing its admission in evidence and the appropriate certification, constitutes the entire bill of exceptions in this case.

In addition to stipulating the status of the parties and the enactment, effectiveness, and contents of the pertinent ordinances, the stipulation indicates the following facts. During the period April 18, 1973, to April 18, 1977, the City issued citations of the type previously described to motorists for violating the ordinances pertaining to parking meters; and motorists paid either $1 or $2, depending upon the time of payment, to the clerk of the municipal court of Lincoln. An accounting of funds is attached to the stipulation. It indicates that, during the period previously mentioned, the total amount collected by the violations bureau for parking meter violations was $809,448.60; of that amount, $277,141.40 was for the fine portion which was paid to the Lincoln school district, and $532,307.20 was for court costs and was paid into the general fund of the City.

The plaintiff's arguments are neither well developed nor sharply focused. However, as we interpret them, he appears to be taking two positions: (1) All court costs under the ordinance are penalties within the Constitution and therefore their use in the general fund of the City is unconstitutional, and (2) in any event, the $1 and $2 parking meter assessments are purely fines and their divergence to pay administrative costs in the guise of "court costs" is a violation of the Constitution.

In support of his position, the plaintiff relies primarily upon the following precedents: School District of McCook v. City of McCook, 163 Neb. 817, 81 N. W. 2d 224; School District of Omaha v. City of Omaha, 175 Neb. 21, 120 N. W. 2d 267. He also cites opinions of the Supreme Courts of Wisconsin and Missouri interpreting somewhat similar constitutional provisions, but, in view of our analysis of Nebraska law, we need not consider them.

In School District of McCook v. City of McCook, *supra,* this court had before it the question of the applicability of Article VII, section 5, of our Constitu-

tion, to money collected for violations of parking meter regulations of the City of McCook. We held there that the sums collected were penalties to which the constitutional provision applied. The applicability of the McCook case to the present case will be considered in detail later in this opinion.

In School District of Omaha v. City of Omaha, *supra,* we held that forfeited recognizances and cash bonds were penalties within the meaning of the Constitution. This case is of little value in resolving the issue before us because of the unique status of court costs in our legal system.

Plaintiff's first claim, that all court costs imposed in connection with any proceeding for violation of law, ordinance, or regulation are penalties within the meaning of Article VII, section 5, Constitution of Nebraska, does not withstand the scrutiny of either constitutional history or precedent.

Article VII appropriates "All . . . fines, penalties, and license money . . . exclusively to the use and support of the common schools . . . ." An examination of the history of court costs prior to the passage of that amendment demonstrates beyond any doubt that the framers of the amendment chose their words carefully, and if they had intended that court costs be included, they would have said so specifically.

The first Nebraska Constitution, which was adopted by the electors in 1866 and became the fundamental law of the state in 1867, did not contain the provision in question. That provision first appears in the Constitution of 1875. Before the Constitution of 1875 was adopted, the concept of court costs as something distinct from either fines or penalties had already been recognized by the Legislature and was embodied in various statutes of the state. See, e.g., sections 276, 278, and 282 of Chapter XXVI, General Statutes of Nebraska, 1876, pp. 787-789, as well as Chapter L, G.S., 1873, p. 840. Court costs from the

enactment of the first statute to today have been payable whether the person charged of a crime was convicted or acquitted. See, § 537, G.S., 1873, p. 841; §§ 29-2701 to 29-2709, R. R. S. 1943. Where the person is acquitted the costs, including that part of costs known as filing fees, are paid by the government. § 537, G.S., 1873, p. 841; § 29-2705, R. R. S. 1943. That court costs have been, during all our history, payable both in civil as well as criminal cases, is so well known as to not require demonstration. Some of such costs are in partial recompense for the expenses of court operation, while others reimburse the party for expenses incurred. Court costs have never been treated as penalties for the violation of a law.

Since the enactment of the amendment, this court has often been called upon to determine whether various forfeitures or impositions, both in criminal and civil matters, were penalties within the meaning of the constitutional provision. See the cases cited in the annotation, Article VIII, section 612, Constitution of 1875, contained in Cobbey's Annotated Statutes of Nebraska, 1911, as well as the annotations appearing in later volumes. It has never been held that court costs are included within the term "penalty" as used in the Constitution.

In School District of McCook v. City of McCook, *supra,* upon which the plaintiff relies, we cited School District of the City of Omaha v. Adams, 147 Neb. 1060, 26 N. W. 2d 24, in which we had held that the 50-percent "penalty" imposed for failure to list personal property for taxation was clearly not the sort of penalty contemplated by Article VII, section 5, of the Constitution, saying: "We said, also, that the more strict definition of 'penalty' was intended, that is, the pecuniary punishment inflicted by a law, ordinance, or police regulation for its violation." We hold that court costs do not fall within this strict definition.

We now turn to the more difficult question. Are

the $1 and $2 impositions penalties disguised as costs?  On the basis of the record before us and before the trial court, we cannot say so.  There is in the record no history of what preceded the ordinance in question with which we might compare the present operation of the violations bureau.  Only on the basis of such a comparison could the fact finder detect a subterfuge and say as a matter of law that the impositions in question are fines or penalties in toto.  It is worthy of note, however, that before section 26-112, R. R. S. 1943, was amended in 1967 recognizing the processing of parking violations by a violations bureau under the aegis of the municipal court, parking violations of all types were required to be handled in the municipal court in the same manner as any other prosecution.  Court costs in such cases were $5.  L.B. 579, Laws 1963, p. 528.  The express purpose of the 1967 amendment was to permit a reduction of court costs where the violations were processed by a violations bureau.  L.B. 189, Laws 1967, p. 452.  Thus, the effect of the 1967 amendment and the ordinance, Lincoln municipal code, chapter 10.68, was to reduce costs in parking violation cases from $5 to 95 cents while L.B. 184, Laws 1971, increased to $6 the court costs in cases other than those processed by a violations bureau.

The factual and legal circumstances existing in School District of McCook v. City of McCook, *supra,* are clearly distinguishable from those in this case.

The McCook ordinance required the deposit of a coin in the meter, and parking was lawful only during the metered time.  In the case of a violation, a notice requiring the person to report to the police station was placed on the auto of the violator by the police department.  The ordinance made no provision as to what happened then although it did provide for a penalty in the form of a $100 fine.  However, such fine was not involved in the McCook case.  The City of McCook later enacted a supplementary ordinance

which provided that if a violator failed to appear within 3 days, a complaint and warrant would be issued but, if the violator appeared within 3 days, he could plead guilty and pay $1 to cover costs and expenses of administration.

Still later, a "regulation" was adopted which purported to increase parking fines from 5 cents to 25 cents if the person appeared within 24 hours and to $1 if he appeared after 24 hours. The origin or basis of the 5-cent fine did not appear in the record in that case. Thereafter, yet another amendatory ordinance was enacted which provided that violators appearing at the police station within 24 hours after receiving the notice were required to pay 25 cents, consisting of 10 cents for the parking privilege and 15 cents for administrative expense. If the appearance was more than 24 hours after the notice was issued, the payment was set at $1.25, consisting of 10 cents for the unpaid parking and $1.15 for administration costs. Only after 72 hours would a complaint be filed, a warrant issued, and a fine imposed.

During the existence of these provisions only four complaints were filed, and those were dismissed upon payment of the amounts above mentioned. The question in School District of McCook v. City of McCook, *supra*, was whether the sums of money received by the city pursuant to the violation notices were penalties within the meaning of the constitutional provision.

In School District of McCook v. City of McCook, *supra*, we said: "It is apparent . . . that the collection of the 5-cent and 25-cent charges were no part of the regulatory purpose of the ordinance, but were in fact penalties paid by the violator to purge himself of the charge of violating the overparking provisions of the ordinance." We then held: "The collection of money by a city, under an ordinance permitting its payment in a fixed amount within a specified time to avoid prosecution for the violation of a regu-

latory ordinance under the police power, is a penalty within the meaning of Article VII, section 5, of the Constitution.

"The exactions involved in the present case are punitive in character, and not remedial or compensatory to the city, and as such are penalties arising under the rules, by-laws, and ordinances of cities as provided in Article VII, section 5, of the Constitution."

In McCook, no complaints were filed, no court was involved, and there were no court costs to be paid or that could be paid. The entire amount of the impositions was clearly punitive. In the case now before us, the ordinance prescribes uniform court costs throughout the entire range of offenses irrespective of the amount of the fine. Complaints are filed which are processed by the violations bureau, an administrative arm of the municipal court. Payment of the specified amount to the violations bureau is deemed equivalent to the entry of a plea of guilty in court. The purpose of the costs appears to be compensatory and the record does not contradict that conclusion. The circumstances which led to our conclusion in McCook simply are not present here.

AFFIRMED.