REQUESTED BY: Senator John W. DeCamp Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator DeCamp:
In your letter of February 5, 1981, you asked our opinion as to the legality of a proposed amendment to LB 45, which would increase the amount of court costs to be paid under Neb.Rev.Stat. § 81-1429 (Reissue 1976) and would in addition direct that such money be placed directly in the State General Fund to be spent as the Legislature sees fit.
The use of the term `court costs' in your letter is not entirely clear, but since you are referring to LB 45, and in effect § 81-1429, it would seem reasonable to assume that you refer to that amount, presently one dollar, which is charged to the defendant in a successful criminal prosecution as a cost and which is in turn placed in a special Law Enforcement Improvement Fund.
In a criminal action no costs can be assessed against the defendant except where specifically authorized by statute.State v. Jungclaus, 176 Neb. 641, 126 N.W.2d 858
(1964). Normally such costs involve statutory filing fees, and other similarly designated fees. In addition some such costs are in partial recompense for the expenses of the court operation, while others reimburse the successful party for expenses incurred. DeCamp v. City of Lincoln,202 Neb. 727, 277 N.W.2d 83 (1979). Also in Nebraska there are such statutory costs as the one dollar assessed for the Nebraska Retirement Fund for Judges, Neb.Rev.Stat. 24-703(4) (Reissue 1979), and, of course, one dollar assessed under § 81-1429 for the Law Enforcement Improvement Fund.
In a previous opinion dated November 25, 1977, this office responded to a proposal to increase the amount of the cost assessed under § 81-1429 by the amount of one dollar. In that opinion we indicated that it was not entirely clear as to the overall constitutionality of such legislation including the existing statute, but nevertheless believed that the existing law, together with the proposed amendment, could probably be successfully defended. That opinion noted that the present law had been referred to by the Nebraska courts, but that the specific question as to its constitutional validity had never been dealt with. The opinion also noted that in other jurisdictions which had dealt with similar provisions, the courts had reached conflicting results.
The courts that have struck down such provisions have generally first found that proper court costs must be directly related to the actual costs of prosecution. Where this relationship could not be found, the `costs' have been found to be in actuality taxes, Ex parte Coffelt, 228 P.2d 199,93 Okl.Crim. 343 (1951), and in violation of the doctrine of separation of powers because the court was in effect made a tax gathering agency. The same result was reached in Ex parte Miller, 263 P.2d 522, 97 Okl.Crim. 351
(1953). Likewise, in People v. Barber, 14 Mich. App. 395,165 N.W.2d 608 (1968), the court found such `costs' to be in actuality fines and hence in conflict with other constitutional provisions providing for the specific allocation of fines.
On the other hand, in the more recent case of State v.Young, 238 So.2d 589 (Fla. 1970), the court found that a statute, which involved the assessment of a dollar as a court cost against every person convicted of violation of a state criminal statute or a municipal or county ordinance to be deposited in the state fund for the general improvement of law enforcement agencies, was a validly assessed cost. Specifically, the assessment was held not to be a tax, thus raising no problems concerning the violation of the principle of separation of powers. The court there noted that, `It is not unreasonable that one who stands convicted of such an offense should be made to share in the improvement of the agencies that society has had to employ in defense against the very acts for which he has been convicted.'Id. at 590. Other courts have subsequently upheld this reasoning. State v. Champe, 337 So.2d 880 (Fla. 1978); and State ex rel. Brown v. Galbraith, 370 N.E.2d 478 (Ohio 1977). In contrast to the conflicting line of cases, these decisions have made a finding of a relationship between the assessed court costs and the overall expenses involved in maintaining a law enforcement and criminal justice system, albeit not a direct relationship to the actual prosecutorial costs.
The proposal contained in your letter of February 5, 1981, involves the placement of such `costs,' directly into the General Fund of the state to be spent as the Legislature sees fit.
This, of course, does away with any relationship between these `court costs' and the expenses of maintaining the criminal justice system, as is presently found in § 81-1429, wherein the money is placed into a Law Enforcement Improvement Fund. The `costs' would become in essence merely a tax for general revenue purposes. Relying upon the rationale in the previously mentioned cases wherein such a cost has been found to be improper and in reality a tax, the proposal would very likely be in conflict with the constitutional requirement of separation of powers, Article II, section 1 of the Nebraska Constitution, by making tax collectors out of the state's courts. In addition, a substantial increase in the amount of this court cost, could possibly result in the `cost,' being found to be in the nature of a fine, thus placing the provision in violation of Article VII, section 5
of the Nebraska Constitution providing for disposition of all penalties and fines. To avoid such characterizations it would appear to be at least necessary to be able to make an affirmative showing involving a reasonable relationship between the assessed court costs and the maintenance of the law enforcement and criminal justice systems. Consequently, it is our opinion that while the present § 81-1429 is probably valid, a proposal such as the one contained in your letter of February 5, 1981, would likely be held unconstitutional.
Very truly yours, PAUL L. DOUGLAS Attorney General John Boehm Assistant Attorney General