REQUESTED BY: Senator Kermit A. Brashear Nebraska State Legislature
LB 762 would repeal the Nebraska Campaign Finance Limitation Act, Neb. Rev. Stat. §§ 32-1601 through 32-1614 (1998, Cum. Supp. 2002) (the "Act"). That bill also provides that any monies left in the Campaign Finance Limitation Cash Fund ("CFLA Cash Fund") upon repeal of the Act would be placed in the Nebraska Accountability and Disclosure Cash Fund. LB 762, § 11. From your opinion request letter, we understand that monies in the CFLA Cash Fund come from four sources: (1) late fees and penalties, (2) income tax "checkoff funds," (3) private donations, and (4) an initial General Fund appropriation from the Legislature.
You state that you propose to offer an amendment to LB 762 which would require that any monies remaining in the CFLA Cash Fund attributable to late filing fees, civil penalties and the interest thereon be disposed of in accordance with art. VII, § 5 of the Nebraska Constitution. That proposed amendment would also provide that any monies in the CFLA Cash Fund not attributable to late fees and penalties would be transferred to the Nebraska Accountability and Disclosure Cash Fund. In that context, you first ask us, "[i]s the introduced version of LB 762 constitutional, or would the proposed amendment to dispose of the money in accordance with Art. VII, § 5 be required in order to comply with the State Constitution?"
Article VII, § 5 of the Nebraska Constitution provides, as is pertinent here:
 Except as provided in subsections (2) and (3) of this section, all fines, penalties, and license money arising under the general laws of the state, . . . shall belong and be paid over to the counties respectively where the same may be levied or imposed, and all fines, penalties, and license money arising under the rules, bylaws, or ordinances of cities, villages, precincts, or other municipal subdivision less than a county shall belong and be paid over to the same respectively. All such fines, penalties, and license money shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue, . . .
We have discussed art. VII, § 5 in previous opinions of this office, and we will quote at length from our Op. Att'y Gen. No. 93038 (May 14, 1993), because the analysis there is directly pertinent to your first question:
Several decisions by the Nebraska Supreme Court have set out rules for the application of Article VII, Section 5. This constitutional provision is self-executing, and punitive assessments such as fines and penalties under penal statutes together with license monies must be used for the schools. School District of the City of Omaha v. Adams,147 Neb. 1060, 26 N.W.2d 24 (1947). On the other hand, compensatory damages or assessments under remedial statutes are not subject to Article VII, Section 5. Id. If money exacted is punitive in character, and not remedial or compensatory, that money is a penalty within the meaning of Article VII, Section 5. School District of McCook v. City of McCook,163 Neb. 817, 81 N.W.2d 224 (1957). A penal statute is prosecuted for the purpose of punishment, and to also deter others from offending in the same way, while a remedial statute is for the purpose of adjusting the rights of the parties involved as between themselves with respect to the wrong alleged. School District of the City of Omaha v. Adams, supra. It is also clear that court costs which are legitimately compensatory are not penalties within Article VII,
Section 5. DeCamp v. City of Lincoln, 202 Neb. 727, 277 N.W.2d 83
(1979). In addition, liquidated damages in favor of a private person, although
 in the form of a penalty, are not violative of Article VII, Section 5 if the amount provided bears a reasonable relation to the actual damages which might be sustained and which damages are not susceptible to measurement by ordinary pecuniary standards. Abel v. Conover, 170 Neb. 926, 104 N.W.2d 684 (1960).
The factual settings of various Nebraska cases also offer additional guidance as to the application of Article VII, Section 5. For example, in the Adams case cited above, an amount was collected from the estate of certain deceased persons as a statutory penalty for failure to list particular property for taxation. The Court held that the penalty in question did not fall under Article VII, Section 5, because it was remedial and compensatory to the taxing bodies involved. This was true even though the penalty was punitive as to the wrongdoer. In DeCamp v. City of Lincoln, supra, the Court held that court costs collected for parking violations were not fines or penalties under Article VII, Section 5 because the costs were collected by an administrative arm of the municipal court, because the costs were uniform throughout the entire range of offenses, and because the costs actually appeared to be compensatory.
 This office has also issued previous opinions dealing with the application of Article VII, Section 5. Most recently, in Op. Att'y Gen. No. 93018 (March 19, 1993), we indicated that a surcharge to be assessed against all convicted criminal defendants could constitutionally be placed into the Victims' Compensation Fund and into the Crime Victim and Witness Assistance Fund. We concluded that the surcharge payments could be characterized as liquidated damages which were compensatory to the victims of uncompensated injury by criminals. In Op. Att'y Gen. No. 21 (February 10, 1981), we stated that a $1 additional court cost assessed against convicted criminal defendants could be placed in a special Law Enforcement Improvement Fund because there was a reasonable relationship between the cost and the maintenance of the law enforcement and criminal justice system. On the other hand, we indicated in the same opinion that placing a portion of certain increased court costs in the state's general fund would likely violate Article VII, Section 5 since those increases could be considered a fine or penalty rather than compensation. Placing court costs in the state's general fund under those circumstances could also violate the separation of powers provision of the state Constitution in that the courts would be acting as tax collectors.
Op. Att'y Gen. No. 93038 (May 14, 1993) at 2-4.
In the present case, the Act contains various provisions for late fees and civil penalties. For example, Neb. Rev. Stat. § 32-1014.01(4) (Cum. Supp. 2002) provides that "[a] candidate who fails to file an affidavit [pertaining to spending limitations] as required by this section shall pay to the commission a late filing fee of twenty-five dollars for each day the statement remains not filed in violation of this section not to exceed seven hundred fifty dollars." In addition, Neb. Rev. Stat. § 32-1612 (1998) provides:
 (1) The Nebraska Accountability and Disclosure Commission shall assess any person that the commission finds to have violated subsection (3) or (5) of section 32-1607 a civil penalty of one thousand dollars or an amount equal to ten percent of the amount by which the limitation was exceeded, whichever is greater, for each violation.
 (2) Unless a specific penalty is otherwise provided, the commission shall assess any person that it finds to have violated any other provision of the Campaign Finance Limitation Act a civil penalty of not more than one thousand dollars for each violation.
On balance, it appears to us, under the various authorities cited above, that the late fees and civil penalties which are the subject of your opinion request are penalties under penal statutes which must be distributed under the provisions of art. VII, § 5. Those late fees and penalties do not seem compensatory to any governmental bodies or to any individuals. On the other hand, it could be fairly stated that the purpose of the late fees and civil penalties, when considered together with the language of the Act, is to punish improper conduct and to deter others from acting in the same manner. Therefore, we do not believe that the introduced version of LB 762 is constitutional under art. VII, § 5. Your proposed amendment or other language which does not provide for placement of late fees and civil penalties in the Nebraska Accountability and Disclosure Cash Fund is required in order to comply with the Nebraska Constitution.
In your opinion request letter, you also state that the Nebraska Political Accountability and Disclosure Commission (the "Commission") sits in Lancaster County, and that any fines and penalties imposed by the Commission are "levied or imposed" in Lancaster County. In that regard, you ask whether art. VII, § 5 requires that such fines or penalties imposed by the Commission must be remitted to Lancaster County.
As noted above, art. VII, § 5 provides that fines or penalties arising out of the general laws of this state "shall belong and be paid over to the counties respectively where the same may be levied or imposed." Our research has disclosed no Nebraska cases which discuss, in any detail, where particular fines or penalties are levied or imposed for purposes of art. VII, § 5. However, the Nebraska Supreme Court has indicated that, "[a]ll fines and penalties imposed under the general laws of the state by section 5 of article 8 of the constitution [a predecessor section to art. VII, § 5] are declared to belong to the county school fund, and are required to be paid to the county where the same were imposed."
State ex rel. Broatch v. Moores, 52 Neb. 770, 73 N.W. 299 (1897). See also School District No 54 of Douglas County v. School District of the City of Omaha, 171 Neb. 769, 107 N.W.2d 744 (1961). In addition, the words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense. Hall v. Progress Pig Inc., 259 Neb. 407, 610 N.W.2d 420 (2000); State ex rel. Douglas v. Beermann, 216 Neb. 849, 347 N.W.2d 297 (1984). As a result, it seems to us that if the Commission sits in Lancaster County and imposes fines and penalties there, then all such fines and penalties imposed should be remitted to Lancaster County in some fashion as per the requirements of art. VII, § 5.
Finally, your contemplated amendment to LB 762 apparently provides that any monies remaining in the CFLA Cash Fund attributable to late filing fees, civil penalties and the interest thereon must be disposed of "in accordance with art. VII, § 5 of the Nebraska Constitution." You wish our opinion as to whether that latter language is sufficient, or whether more specific language should be added to the bill which would state that the fine and penalty monies in the CFLA Cash Fund must be remitted to the county where those fines or penalties were levied or imposed and used for the support of the common schools.
In State ex rel. Stenberg v. American Midlands, Inc., 244 Neb. 887,509 N.W.2d 633 (1994), the Nebraska Supreme Court considered the constitutionality of civil penalties under the Nebraska Consumer Protection Act. The court stated:
 The Bazemores also argue that the imposition of civil penalties in this instance violated article VII, § 5 of the Nebraska Constitution because the Consumer Protection Act fails to specify that any civil penalties recovered pursuant to that act must be paid to the appropriate school fund. Again, the Bazemores' assertion lacks merit. The fact that a statute is silent as to the distribution of possible civil penalties does not render it inconsistent with the provisions of article VII, § 5, of the Nebraska Constitution.
American Midlands, 244 Neb. 893, 509 N.W.2d 637. (Emphasis added). Based upon the language in the American Midlands case, we do not believe that it is necessary to include language in your amendment to LB 762 which would specify how the fine and penalties monies in the CFLA Cash Fund should be distributed, and your proposed language referencing art. VII, § 5 appears sufficient. However, whether you wish to include more specific language in your amendment is ultimately a matter of legislative policy, and a decision for you and the Legislature.
Sincerely yours,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
_________________________________ Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature 05-166-21