STATE OF WEST VIRGINIA
HUMAN RIGHTS COMMISSION
*v.*
PEARLMAN REALTY AGENCY
(No. 13898)
Decided November 29, 1977.

*Billy Jack Gregg*, Assistant Attorney General, for appellants.

*Arthur J. Recht* for appellee.

HARSHBARGER, JUSTICE:

The West Virginia Human Rights Commission upon complaint by Nora Coleman, a black person, found Pearlman Realty Agency guilty of racial discrimination in denying her the opportunity to view a house. The Commission entered a "remedial" order requiring the agency to cease and desist from engaging in any unlawful discriminatory practice in the future; to adopt an advertising program which would feature its listings as being available equally to everyone; to advise its employees and anyone listing property with it, present and future, of its non-discriminatory practices; to pay Ms. Coleman $1,000.00 as "compensation and damages for the humiliation, embarrassment, emotional and mental distress, and loss of personal dignity"; and to report regularly to the Commission about its compliance with the order.

Pearlman Realty appealed to the Circuit Court of Brooke County, which reversed, on the basis of our decision in *State of West Virginia Human Rights Commission v. Pauley,* \_\_\_ W.Va. \_\_\_, 212 S.E.2d 77 (1975), the part of the order that awarded damages. No monetary loss had been proved by Ms. Coleman and no damages for such were awarded by the Commission.

The question, therefore, is whether our Human Rights Commission can award compensatory damages for "humiliation, embarrassment, emotional and mental distress and loss of personal dignity", absent any monetary loss by the party discriminated against, as part of its cease and desist order in a discrimination case.

*W.Va. Code,* 5-11-1, *et seq.* empowers the West Virginia Human Rights Commission to enforce the civil rights of our citizens to be free from discrimination in employment and housing. It shall "receive, investigate and pass upon . . . complaints alleging discrimination in the sale, purchase, lease, rental and financing of housing accommodations of real property . . . ." *Code,* 5-11-8(c).

One of the enforcement methods provided the Commission is its power to issue cease and desist orders; and it

is further allowed "[t]o do all other acts and deeds necessary and proper to carry out and accomplish effectively the objects, functions and services contemplated by the provisions of this article [11]." *Code,* 5-11-8(h).

The Commission's procedures and remedies "shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in the article, he may not subsequently resort to the procedure herein." *Code,* 5-11-13.

This Court decided the obvious question about the effect of the constitutional right to jury trial as it relates to award of damages by an administrative agency in *Pauley, supra.* We cited with approval the New Jersey court's persuasive opinion in *Jackson v. Concord Company,* 54 N.J. 113, 253 A.2d 793 (1969).

The question here has also been addressed by that court. *In Zahorian v. Russell Fitt Real Estate Agency,* 62 N.J. 399, 301 A.2d 754, 61 ALR3d 927 (1973), it was asked to do just what we are asked: to reinstate an administrative damages award—there for $750.00—for humiliation and pain and suffering caused by a real-estate agent's discrimination against an unmarried female. It concluded, 301 A.2d at 763:

> We have no hesitancy in determining that the Director acted fairly within the orbit of the legislative delegation to him when he awarded $750 to the complainant as incidental compensatory damages for the pain and suffering inflicted on her.

The court answered the argument that allowing administrative agencies to award damages for pain and suffering would inevitably lead to substantial administrative, non-jury awards of damages which would be unconstitutional:

> But it would seem entirely evident that the recognition of administrative authority to make mi-

nor or incidental awards need not carry with it any authority to entertain a matter where, because of the severity of the consequential injury and the extensiveness of the claim, the item of damages has become primary and the other relief incidental rather than the reverse. Surely there is nothing incompatible in concluding that while the Legislature contemplated that the Director would have authority to award compensatory damages for pain and suffering as well as economic loss, his authority would be confined to an award which truly constituted only "incidental relief" rather than a primary item. 301 A.2d at 761-762.

It must be particularly noted that we, as did the New Jersey court, deal with damages incidental to the use by the Commission of its power to issue cease and desist orders vested in it by the statute. *See, Harvard v. Bushberg Brothers, Inc.*, 137 N.J.Super. 537, 350 A.2d 65 (1975); *A.P. Green Service v. State Fair Employment Practice Commission*, 19 Ill.App.3d 875, 312 N.E.2d 314 (1974); *Williams v. Joyce*, 479 P.2d 513, 40 ALR3d 1272 (Or.App. 1971).

The right to trial by jury before deprivation of property is constitutionally required. W. Va. Const. art 3, § 13. Considering our high regard for the sanctity of jury verdicts, and the right of every citizen to be judged by his or her peers, this Court would be the very last to erode this constitutional guarantee.

However, where the award of damages is purely incidental, as here, and is a means of enforcing the broad powers of the Commission, we find it no more constitutionally odious than the other statutorily authorized penalities and requirements set out in the Commission's cease and desist order, all of which require the expenditure of time and money by the discriminating party. We comprehend no material difference between an expenditure of $1,000.00 to compensate a person aggrieved, humiliated and embarrassed by a discriminator and the financial expenditure which will result from the dis-

criminator's compliance with the other directives of the cease and desist order, such as notifying employees and others of the Commission's order, keeping the records required by the order, adjusting advertising, and such.

The fact that the money goes to the injured party does not change its effect on the respondent, which is to secure compliance with the Commission's order and to depress the discriminator's ambition to repeat the misbehavior.

The language in *Pauley, supra,* would seem to allow award to the complainant only of "out of pocket" expenses, properly proved. To the extent that it so holds, it is disapproved.

Many courts confronted with the same situation have come to the opposite conclusion and have disallowed administrative agency awards for humiliation, mental pain and suffering. *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 325 A.2d 740 (1974); *Mendota Apartments v. District of Columbia Commission on Human Rights,* 315 A.2d 832 (D.C. 1974); *Ohio Civil Rights Commission v. Lysyj,* 38 Ohio St.2d 217, 313 N.E.2d 3 (1974); *Zamantakis v. Commonwealth Human Relations Commission,* 10 Pa.Cmwlth. 107, 308 A.2d 612 (1973); *Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758 (Iowa 1971). We believe these courts may have overemphasized the label of the relief, i.e., "compensatory damages", in holding such awards unauthorized. In fact, an award of an incidental amount of money to a complainant is, from the defendant's perspective, nothing more or less than another facet of the Commission's powers of enforcement which require defendant to expend money in order to comply with the cease and desist order and secure his nondiscriminatory conduct in the future.

We are not asked to decide if there is a civil remedy when injuries and alleged damages are too extensive to fall within the Human Rights Commission's jurisdiction. But we cannot avoid observing that the legislature obviously recognized the existence of other remedies in the express mandate of *Code,* 5-11-13, that one choosing the

administrative route could not also use any other road to recovery.

*Code*, 5-11-9, sets forth unlawful discriminatory practices. W. Va. Const. art. 3, § 17 provides that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law. . . ." We therefore note that victims of unlawful discrimination have access to our courts when the main object of their complaint is to recover damages. *See, Loomis Electronic Protection v. Schaeffer*, 549 P.2d 134 (Alaska 1976); *Gray v. Serruto Builders, Inc.*, 110 N.J.Super 297, 265 A.2d 404 (1970); *Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955); *Bailey v. Washington Theatre*, 34 N.E.2d 17 (Ind. 1941); *Bolen v. Grand Rapids Operating Corp.*, 329 Mich. 318, 214 N.W. 241 (1927).

For the foregoing reasons the judgment of the Circuit Court of Brooke County is reversed and the case is remanded for entry of an order consistent with this opinion.

*Reversed and remanded.*