383 S.E.2d 60

**Adna Earl THOMAS, Commissioner Department of Employment Security**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Elaine B. Harless.**

No. 18227.

Supreme Court of Appeals of West Virginia.

July 7, 1989.

Jack O. Friedman, WV Dept. Empl. Security, for Adna Earl Thomas.

Charles R. Garten, Charleston, for appellee.

PER CURIAM:

This is an appeal by the complainant, Elaine B. Harless, from the Kanawha County Circuit Court's reversal of an administrative ruling of the Human Rights Commission, which found that the West Virginia Department of Employment Security (DES) discriminated against the complainant in its employment selection process. Since the holding of the Commission rested on a purely factual determination and assessment of credibility where there was a clear discrepancy in the witness' testimony concerning the alleged legitimate reason for not hiring the complainant, the trial judge's decision to reverse these factual findings as "clearly wrong" is reversed, and the case is remanded, with directions.

The complainant worked for the DES for seventeen years. DES posted a job position in the spring of 1980 for which the DES concedes the complainant was "eminently qualified." It is undisputed that the complainant informed her immediate supervisor, Virginia Harris, that she applied for the job, but was, at least, dissatisfied with

the thought of leaving her current surroundings. Harris recalls telling Charles Ellison, the supervisor of the department where complainant was applying for the posted position, that the complainant did not want the job. Ellison does not recall the conversation. Ellison spoke with the complainant in a brief, casual conversation in late April, 1980, wherein the complainant stated that she wanted her superiors "to know that she was around." Ellison also recalls that the complainant also stated she did not want the job. The complainant does not recall making such a statement.

Ellison, in turn, told Arlie Hubbard, an employee Ellison supervised, that the complainant did not want the job. Hubbard subsequently interviewed the complainant in the beginning of May, 1980.

The complainant testified that Hubbard never asked her if she had any misgivings regarding the position. She interviewed for the position and did not withdraw her application. Hubbard was never called as a witness, although the record indicates he was available. Ellison testified that Hubbard told him that he offered the complainant the job and she orally withdrew her application.

Apparently, within days of the interview, another woman was offered the posted position, but declined due to health reasons.[1] This woman, the complainant, and three men made up the preferred applicant pool, selected by Hubbard. DES subsequently posted a notice on May 5, 1980, that the job would not be filled.

The complainant testified that she spoke with Ellison on May 16, 1980, concerning her failure to get the job. Complainant testified that Ellison informed her that a more qualified male, Richard Westfall, who was not a member of the preferred applicant pool, was hired. Ellison denied that he told the complainant that Westfall was more qualified. He also denied that Westfall was hired at that point. However, a May 20, 1980 employment protest filed by the complainant parallels her account of the events.[2]

On July 16, 1980, Richard Westfall, who had less than one year of experience, was on the DES payroll as a "trainee" for the posted position. He subsequently attained the position. It is undisputed that he is less qualified than the complainant.

The complainant filed a complaint with the Human Rights Commission alleging gender-based discrimination in the DES selection process, and administrative hearings were conducted on the matter. The hearing examiner subsequently issued a proposed order which was adopted by the Commission, with one amendment in regard to damages, discussed *infra*.

The hearing examiner found that the complainant made a *prima facie* case for a discriminatory employment selection process under *W.Va.Code*, 5–11–9 [1981] and syl. pt. 1, *Shepherdstown Volunteer Fire Dept. v. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983). The hearing examiner then concluded that the employer's alleged legitimate nondiscriminatory reason for not hiring the complainant, because she withdrew her application, was pretextual and therefore did not rebut the presumption that DES discriminated

---

**1.** In reversing the Commission's finding that complainant was subjected to gender-based discrimination, the trial judge gave great weight to the fact that a woman was initially offered the position. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957, 969 (1978). (Title VII provides equal opportunity for *each* applicant). *See also Welch v. University of Texas*, 659 F.2d 531 (5th Cir.1981) (evidence that complainant was replaced by another member of complainant's protected class not dispositive for showing lack of discriminatory motive in unlawful discharge); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529 (11th Cir.1984) (previous offer to another member of protected class of position not

offered to qualified complainant not dispositive in establishing lack of discriminatory motive in unlawful hiring practices claim).

**2.** The complainant filed a civil service grievance alleging that she was more qualified for the job but denied for "other" reasons. After losing at two levels of the grievance process, the complainant apparently failed to pursue matters further, and filed a complaint with the Human Rights Commission, alleging gender-based discrimination in the DES selection process. Jurisdiction of the Human Rights Commission was never challenged by the DES.

against the complainant. *See* syl. pt. 2, *Shepherdstown, supra.*

In conjunction with the holding that the employer's evidence of a legitimate reason for not hiring the complainant was pretextual, the hearing examiner made the following factual determination:

9. With respect to the complainant's claim that she does not recall having any conversation with Charles Ellison or Virginia Harris concerning her lack of interest in the subject position, the undersigned carefully observed complainant's demeanor during the hearing and was convinced of her sincerity in that regard. The complainant may very well have made an off-handed remark about not getting the job, but the weight of such a statement does not counterbalance the fact that the complainant was repeatedly informed that her application was rejected due to the better qualifications of the selected person.

13. Complainant was never offered the job by the respondent for the reason that the complainant had supposedly removed herself from the competition by commenting informally that she was not really interested in the job. There is no documentation of record to confirm this reasoning other than testimony of witnesses during the hearing, which is conflicting at best.

The hearing examiner recommended as relief: back pay totalling $293.40, plus interest; $2,500 for the humiliation that the complainant testified she experienced; $792 attorney's fees. The Commission adopted all findings of fact and conclusions of law, but ordered *sua sponte* that the complainant's damages for humiliation be increased to $4,000.

DES appealed to the circuit court of Kanawha County, pursuant to former *W.Va. Code,* 5–11–11 [1969]. *See W.Va.Code,* 5–11–11 [1989] for new appellate procedures regarding the Commission's decisions. The circuit court acknowledged that the complainant was "not treated fairly" and made a *prima facie* case of sexual discrimination. However, the Court reversed the Commission's finding of fact number 13

(the basis for the Commission conclusion that the employer's alleged legitimate reason was pretextual), as

plainly wrong. The testimony of two witnesses as to the statements made by the complainant are not conflicting, they are consistent. The complainant does not deny making the statements. Furthermore, Finding of Fact No. 13 ignores the existence of Respondent's Exhibit No. 1 [the step two grievance order, an intradepartmental employment grievance finding that the complainant orally withdraw her application]. There is no conflict in the testimony of the witnesses.

Therefore, the Court found that DES had sufficiently rebutted the *prima facie* case by establishing it legitimately did not hire the complainant because she orally withdrew her application.

█ The Commission found that the DES did not sufficiently rebut the presumption of a discriminatory practice for a legitimate nondiscriminatory reason. Syl. pt. 3, *Shepherdstown, supra.*

' "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local 655,* W.Va., 280 S.E.2d 653 (1981).' Syl. pt. 4, *State v. Logan–Mingo Area Mental Health Agcy.,* [174] W.Va. [711], 329 S.E.2d 77 (1985).

Syl. pt. 1, *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989).

█ In this case, the Commission made the factual determination that the complainant never formally withdrew her application. It also found that the DES never asked her of her concerns about the position, or informed her that due to her apparent concerns, or alleged disinterest, she was not being considered for the job.

This factual finding was supported by the complainant's unrefuted testimony that she never withdrew her application while being interviewed by Hubbard. Further, any conversations concerning the job oc-

curred prior to the interview, which, oddly, was conducted nonetheless. According to DES, the complainant informed Hubbard during the interview that she wanted to withdraw her application. Hubbard did not testify. Further, although DES admitted at the hearing that the complainant was far better qualified for the job than the male who was subsequently hired, the Commission could properly find credence in the complainant's testimony that she never withdrew her application and was subsequently informed by Ellison that the male hired by DES was "better qualified." DES had initially answered the complaint in such a manner. The intradepartmental, step two grievance order found that the male, who was hired as a "trainee," "met all qualifications for the position."

The Commission could conclude that the complainant, though expressing concern or hesitancy about the position, never formally withdrew her application for it, and the DES "went through the motions" of interviewing her, and subsequently hired a less qualified male, outside the preferred applicant pool. Therefore, the trial judge erred when he reversed the decision as clearly wrong since there was evidence in the record to support the finding, which turned on witness credibility.

█ The DES raised before the circuit court the issue of the Commission's authority to *sua sponte* increase the award of incidental damages for humiliation from $2,500, which the hearing examiner recommended, to $4,000. DES also raises the issue before the Court today. The complainant placed evidence of incidental damages for humiliation in the record. However, the amount of incidental damages awarded by the Commission exceeds the jurisdictional limit for such awards contemplated in *Human Rights Commission v. Pearlman Realty*, 161 W.Va. 1, 239 S.E.2d 145 (1977). Therefore, the findings and conclusions of the Commission, regarding the discriminatory selection process, are reinstated and the case is remanded to the Commission with directions to award the complainant the proper amount of incidental damages for humiliation consistent with

the proof of such damages, contained in the record, and consistent with our holdings in *Pearlman* and syl. pt. 2 of *Bishop, supra.*

Based upon the foregoing, the Kanawha Circuit Court order of March 30, 1987, is reversed and the Commission's order of April 25, 1986, is reinstated insofar as its findings of fact, conclusions of law, award of back pay, and attorney's fees. However, the award of incidental damages is remanded to the Commission, with directions to fashion an administrative remedy, consistent with this opinion.

Reversed and remanded with directions.