566 S.E.2d 237

Angela FRYE, Complainant Below/Appellee Below, Appellee

v.

FUTURE INNS OF AMERICA–HUNT-INGTON, INC., and Richard Huff, in His Individual Capacity, Respondents Below/Appellants Below, Appellees

The West Virginia Human Rights Commission, Appellant.

No. 30091.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 19, 2002.

Decided May 30, 2002.

Dissenting Opinion of Justice Starcher July 3, 2002.

---

Darrell V. McGraw, Jr., Attorney General, Paul R. Sheridan, Senior Assistant Attorney General, Charleston, for West Virginia Human Rights Commission.

MAYNARD, Justice.

This case is before the Court upon the appeal of the West Virginia Human Rights Commission from the Circuit Court of Kanawha County, which affirmed in part, and reversed in part, the decision of the Human Rights Commission. The Commission contends that the circuit court committed reversible error by holding that the respondents, Future Inns of America–Huntington, Inc. and Richard Huff, are jointly and severally liable for the incidental damages suffered by the complainant, Angela Frye. The Commission argues that incidental damages should be assessed against each respondent. We disagree and affirm.

## I.

### FACTS

Future Inns of America–Huntington, Inc. (Future Inns) owns the Econo Lodge in Huntington, West Virginia. Richard Huff owns Hospitality Services Unlimited, Inc. (Hospitality Services) which provides contractual management services for Future Inns.[1] In April 1992, Richard Huff hired the complainant, Angela Frye, to work at the Econo Lodge as an assistant manager or

---

1. Neither Richard Huff nor Future Inns filed a brief or made an appearance in this Court.

manager trainee. She was promoted to the position of general manager when the manager resigned in May 1993. Although Ms. Frye was paid by Future Inns, Richard Huff supervised her.

During the time that Ms. Frye worked for Future Inns, she lived on hotel property. Mr. Huff did not reside in Huntington; however, he visited the Econo Lodge about once each month. During these visits, he usually stayed in a hotel room on the premises. Ms. Frye often joined him for dinner to discuss management issues. Following one such dinner in August or September 1993, Mr. Huff made sexual advances toward Ms. Frye. She testified in a hearing before the administrative law judge (ALJ) that following dinner she returned to the Econo Lodge with Mr. Huff. He attempted to kiss her. She rebuffed his efforts. He nonetheless followed her to her room insisting that they needed to discuss business. After stating that the ice machine made too much noise to talk in the hallway, he entered her room. He once again tried to kiss her at which time she asked him to leave. Rather than leaving, he pushed her down on the bed, got on top of her, and tried to lift her skirt. Ms. Frye resisted Mr. Huff's advances and once again asked him to leave her room. At that time, he left.

About a month later, Mr. Huff was once again occupying a room at the Econo Lodge while visiting the hotel property. He and Ms. Frye had dinner together. Upon returning to the hotel, Mr. Huff stated that some maintenance problems existed in his room. He indicated that Ms. Frye should follow him to his room so he could show her the problems. Once inside the room, Mr. Huff tried to kiss Ms. Frye and asked her to spend the night. She refused.

Ms. Frye also testified that from September 1993 through May 1995, Mr. Huff repeatedly asked her to spend the night with him. She repeatedly refused. She says that she did not discontinue her employment with the hotel because she was a student at Marshall University and needed the job. Mr. Huff did not document a single act of misconduct or a single performance problem during Ms. Frye's tenure at the hotel. In fact, Mr.

Huff gave Ms. Frye two $1,000 bonuses and a bonus vacation for improving occupancy levels. However, after Ms. Frye filed her action with the Human Rights Commission, Mr. Huff generated a list of twenty-two performance problems. Ms. Frye also believes the bonus vacation was delayed because she told Mr. Huff she preferred to choose her companion as opposed to going away for a week with him.

Ms. Frye severed her employment relationship with Future Inns on May 19, 1995. She suffered a brief period of lost wages but mitigated these damages by accepting a job in Columbus, Ohio. She subsequently moved to Cincinnati, Ohio where she is currently employed in the hotel industry.

On July 26, 1995, Ms. Frye filed a complaint with the West Virginia Human Rights Commission alleging sexual harassment and discrimination. She named both Mr. Huff and Future Inns as respondents. She contended that "Mr. Huff made these sexual demands as a condition of employment. When I rejected his sexual demands he began to constantly harass me about my work performance." Ms. Frye claimed that "[t]he Respondent created a sexually hostile working atmosphere." A hearing was held before an ALJ on January 13 and 14, 1998. The ALJ's final decision was entered on January 28, 1999. The ALJ found that "the evidence credibly establishes that the complainant was subjected to quid pro quo sexual harassment by respondent, Richard Huff, during the period between September, 1993 and the spring of 1995." The ALJ also determined that "[t]he complainant has established that respondent, Future Inns of America, Inc., is liable for the sexual harassment of its employee, Angela Frye, by its manager Richard Huff."

The ALJ concluded:

6. The respondent, Future Inns of America, Inc. and the respondent, Richard Huff, are jointly and severally liable for damages of back pay, benefits, prejudgment interest in the amount of $7,807.27 through the end of July, 1998 ... and thereafter prejudgment interest through December of 1998.

7. Each respondent is liable for incidental damages in the amount of $3,227.45 for the emotional distress wreaked upon complainant by their illegal sexual harassment.

Richard Huff and Future Inns appealed the ALJ's decision to the Commission alleging that the findings of fact and conclusions of law were not supported by the evidence. The respondents argued that Richard Huff was not the agent of Future Inns and Future Inns had not acted improperly; consequently, Future Inns could not be liable. The respondents argued that Ms. Frye filed her action after the statute of limitations had run. They also maintained that Ms. Frye submitted no evidence, such as income tax returns or payroll check stubs, upon which an award for lost wages could be based and her allegations were insufficient to sustain the verdict. After reviewing the record, the Human Rights Commission adopted the "Administrative Law Judge's Final Decision as its own, without modification or amendment."

Pursuant to W.Va.Code § 5–11–11 (1989),[2] Richard Huff and Future Inns appealed the Commission's decision to circuit court. The respondents opined that "[t]he decision is clearly wrong in view of the reliable, probative and substantial evidence on the whole record." They believed the Commission erred because Richard Huff was the only person accused of wrongdoing and he was not an agent, servant, or employee of Future Inns; the claim was filed after the statute of limitations had run; Ms. Frye failed to report any misconduct; and the best evidence rule was violated because Ms. Frye failed to submit any documents such as tax returns or payroll check stubs to support her claim for lost wages. The Commission filed a motion to dismiss arguing that the circuit court did not have jurisdiction to hear the appeal because the incidental damage award against each respondent did not exceed $5,000.00.

The circuit court preliminarily considered the Commission's jurisdictional challenge. In its order entered on October 18, 1999, the court concluded that "[b]ecause the statute speaks to awards of damages in 'cases,' not to award[s] of damages with respect to individual defendants or claims, the Court is of the opinion that it is the aggregate of the amounts awarded against the defendants in a case that determines whether or not this Court has jurisdiction." After considering the evidence, the circuit court agreed with Mr. Huff and Future Inns

that it defies logic for the commission to hold that two parties are jointly and severally liable for damages in the form of back pay arising out [of] a series of acts, but to hold that the same two parties are severally liable for incidental damages for emotional [distress] arising out [of] the same series of acts.

The circuit court's final order was entered on June 13, 2001. The court found that the respondents' timeliness and best evidence issues were "completely groundless." This was so because Ms. Frye alleged that at least one act of sexual harassment took place in the year immediately preceding the filing of her complaint, and she was attempting to prove lost wages rather than the content of a document. The court finally held that Mr. Huff and Future Inns were "jointly and severally liable for any damages suffered by the appellee." After making a minor modification for lost wages, the court reduced the incidental damages award by $3,277.45. The respondents were jointly and severally liable for the remaining $3,277.45 incidental damages award. It is from this order that the Commission appeals.

## II.

### STANDARD OF REVIEW

The issue presented in this case involves a question of law. We must determine wheth-

**2.** W.Va.Code § 5–11–11 (1989) reads in pertinent part:

[I]n the following cases the appellant may prosecute the appeal in the circuit court of Kanawha County pursuant to section four [§ 29A–5–4], article five, chapter twenty-nine-a of this code: (1) Cases in which the commission awards damages other than back pay exceeding five thousand dollars; (2) cases in which the commission awards back pay exceeding thirty thousand dollars; and (3) cases in which the parties agree that the appeal should be prosecuted in circuit court.

er incidental damages awarded by the Human Rights Commission may be assessed per case or per respondent. This Court previously said, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

## DISCUSSION

■ On appeal, the Commission maintains that awarding non-economic damages on a per respondent rather than a per case basis in a human rights case does not violate the respondents' constitutional right to a jury trial[3] as long as the award is incidental to lost wages and does not exceed a nominal amount. The Commission believes W.Va. Code § 5–11–11 (1989) anticipates multiple awards for non-economic damages in a single case when multiple respondents are at fault by allowing awards up to $5,000 for incidental damages. The Commission also believes that the existence of multiple claims against a single respondent "would also give rise to the possibility of several incidental awards within the same case." However, the Commission concedes that these multiple awards should be allowed only "where the extent of the Complainant's injury would support it."

This Court first recognized the authority of the Commission to award money damages in *State Human Rights Commission v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77 (1975). In *Pauley*, Charles Robinson filed a complaint with the West Virginia Human Rights Commission against Edith M. Pauley charging Ms. Pauley with racial discrimination because she refused to rent him an apartment. The Commission found Ms. Pauley guilty of discrimination and imposed damages in the amount of $480 as compensation for time and effort expended in finding suitable housing; $100 as compensation for embarrassment and loss of personal dignity; and $100 as exemplary damages for alleged misconduct. Ms. Pauley appealed to circuit court. The court

agreed that Ms. Pauley had discriminated against Mr. Robinson but found that the Commission had no statutory authority to award monetary damages.

The Commission appealed to this Court. The *Pauley* Court found no constitutional objection to legislative authorization of an administrative agency to award damages to a victim of unlawful discrimination. The Court then decisively stated that "[u]nder the authority granted by the Human Rights Act, as provided in W.Va.Code, 1931, 5–11–1 et seq., as amended, the Human Rights Commission may make an award of monetary damages to a victim of unlawful discrimination as defined in that Act." Syllabus Point 1, *id.* However, *Pauley* was limited to allowing complainants to receive compensatory damages and then only upon proper proof of monetary loss.

■ Two years later, in *State Human Rights Commission v. Pearlman Rlty. Agcy.*, 161 W.Va. 1, 239 S.E.2d 145 (1977), this Court disapproved the *Pauley* language which "seem[ed] to allow [an] award to the complainant only of 'out of pocket' expenses, properly proved." *Id.*, 161 W.Va. at 5, 239 S.E.2d at 147. The *Pearlman* Court determined that the Commission could award damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity when the complainant demonstrated no monetary loss. The Court's single syllabus point states, "The West Virginia Human Rights Commission as part of its cease and desist orders may award to complainant incidental damages as compensation for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, without proof of monetary loss. *W.Va.Code*, 5–11–8."

This Court was presented with a more troubling issue in *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989). The facts of *Bishop Coal* show that Brenda Salyers was employed by Bishop Coal Company. She bid for a vacant job as a scoop operator but was not given the job allegedly because no foreman could vouch for her ability to operate a scoop. She protested and the employer arranged a test. She admitted that

---

**3.** Article III, Section 13 of the West Virginia Constitution states in pertinent part, "In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved[.]"

she did not do very well on the test but nonetheless filed a grievance. During arbitration the parties agreed to another test. Once again the test results were not very satisfactory but evidence was submitted to show that the equipment may not have been in perfect operating condition. When she was not hired for the job, she filed a complaint with the West Virginia Human Rights Commission alleging gender-based harassment, gender-based job discrimination, and gender-based discrimination in training opportunities.

The Commission found that the employer discriminated against Ms. Salyers because three to four months before she bid for the scoop operator job, a male employee with little or no training or experience was promoted to the position of scoop operator. The male employee was not tested nor was he required to demonstrate his proficiency on the scoop. The employer admitted that the male employee was continuing to be given on-the-job training when Ms. Salyers entered her bid but disputed the issue of whether Ms. Salyers was accorded disparate treatment because of her gender. The Commission found that Ms. Salyers was a victim of gender-based discrimination and awarded her $400 in back pay plus $7,500 for mental anguish. Bishop Coal Company appealed directly to this Court. On appeal, this Court affirmed the Commission's decision that Ms. Salyers was discriminated against because of her gender and upheld the $400 award. The troubling area for the Court was whether to affirm the $7,500 award.

█ In considering the incidental damages award, the *Bishop Coal* Court reasoned as follows:

We agree with the majority view of the states with statutes similar to our own that hold such statutes do not allow human rights commissions to award punitive or compensatory damages except for back pay and incidental damages. Allowing the commission to award money other than limited incidental damages, without a jury, would violate *W.Va. Const.*, art. III, § 13. We also emphasize that our statute does allow a grievant to pursue his action in a circuit court and specifically authorizes the court to award *"legal or equitable relief."* *W.Va.Code,* 5–11–13 [1987]. *W.Va.Code,*

5–11–8 [1989] (authorizing the commission to issue cease and desist orders) does not contain a specific authorization for legal relief.

*Bishop Coal,* 181 W.Va. at 79, 380 S.E.2d at 246. In Syllabus Point 2, the Court held:

Our original authorization in *Human Rights Commission v. Pearlman Rlty. Agcy.,* 161 W.Va. 1, 239 S.E.2d 145 (1977) of damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, contemplated only "incidental" awards. We approved $1,000 as an incidental award for such damages. That figure may be adjusted for inflation, but the Commission must be aware of its jurisdictional limitations because awarding a higher amount impinges upon a defendant's constitutional right to trial by jury.

The current figure used by the Commission is $3,277.45. The question left unanswered by *Bishop Coal* which we must resolve today is whether that figure applies per respondent or per case.

Without offering an explanation, the ALJ held that Future Inns and Mr. Huff were jointly and severally liable to Ms. Frye for compensatory damages but severally liable for incidental damages. The Commission adopted the ALJ's order "without modification or amendment." By incorporating the ALJ's decision into its final order, the Commission found that "[t]he only person who had the authority to end the sexual harassment was the very person who was engaging in it[ ]" and concluded that "[t]he liability for Mr. Huff's sexual harassment of complainant therefore is imputed to Future Inns of America, Inc." Ms. Frye's noncompensatory damages grew out of the exact same complaint as her compensatory damages. The Commission nonetheless ordered one compensatory damage award and two incidental damage awards.

The circuit court found this position untenable and stated that "[i]t is apparent from the record in this action that the appellants are jointly and severally liable for *any* damages suffered by the appellee." (Emphasis added). The court supported this holding by stating, "The constitutional limitation pertains to the amount in controversy in the suit, not the amount in controversy with respect to each defendant."

■ We agree with the circuit court that the liability in this case is joint and several. Richard Huff owns Hospitality Services which operates the Econo Lodge under a contract for Future Inns. During the relevant time period, Mr. Huff controlled the terms and conditions of Ms. Frye's employment, including the authority to hire, supervise, discipline, and terminate employment. Ms. Frye did not present any evidence which showed that Future Inns actively participated in creating a hostile working environment or that Future Inns engaged in any activity separate and apart from Mr. Huff which might be a source of independent liability on its part. The liability of Future Inns is derived solely from the fact that its designated manager created a hostile working environment.[4] Moreover, W.Va.Code § 5–11–11 makes no distinction between the number of awards a complainant may be granted for compensatory damages versus noncompensatory damages. The language in the statute is clear. The statute speaks to damages which are awarded in "cases" rather than against individual respondents.

■ Richard Huff and Future Inns are, therefore, equally liable for the sexual harassment inflicted upon Ms. Frye. We agree with the Court of Appeals of New York that:

> When multiple tort-feasors are found to be liable for damages, they may not be said to have an inseverable interest in the judgment, even though the factual basis for each party's liability is identical. Liability is said to be "joint and several", meaning that each party is individually liable to plaintiff for the whole of the damage[.]

*Hecht v. City of New York*, 60 N.Y.2d 57, 62, 454 N.E.2d 527, 530, 467 N.Y.S.2d 187, 190 (1983). (Citation omitted). We do not interpret W.Va.Code § 5–11–11 to mean that a complainant may collect multiple incidental damage awards because multiple respondents exist in the case. The circuit court correctly concluded that "the amount of incidental damages awarded by the commission was in excess of the amount it may award."

We, therefore, hold that when the Human Rights Commission awards incidental damages to a complainant, the limit of damages provided in *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989), applies per case rather than per respondent.

For the foregoing reasons, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.

Justice STARCHER dissents and files a dissenting opinion.

STARCHER, Justice, dissenting.
(Filed July 3, 2002)

This Court once referred to the Human Rights Act as "strong medicine to cure the social maladies of intentional and unnecessary" discrimination. *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 64, 479 S.E.2d 561, 574 (1996). In light of the majority's opinion, I believe this phrase no longer rings true.

I dissent because I believe that the majority opinion's interpretation of the Act has undercut the ability of the Human Rights Commission to effectively address discrimination. More directly, I believe that the majority opinion's interpretation has seriously undermined the Commission's ability to sanction and punish individuals who have engaged in intentional discrimination, and its ability to make victims of discrimination whole.

The Act is a remedial statute, and is supposed to be "liberally construed to accomplish its objectives and purposes." *West Virginia Human Rights Comm'n v. Moore*, 186 W.Va. 183, 187, 411 S.E.2d 702, 706 (1991). By mandate of the Legislature, "[t]he West Virginia Human Rights Act 'shall be liberally construed to accomplish its objective and purpose.' W.Va.Code, 5–11–15 (1967). This construction applies to both its substantive and procedural provisions, and is consonant with this Court's view that administrative proceedings should not be constrained by undue technicalities." Syllabus Point 1, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990).

---

**4.** As stated hereinabove, the liability of Richard Huff and Future Inns is joint and several. Accordingly, the analysis presented here is limited to cases that do not involve independent liability on the part of the defendants.

There is no better way to get the attention of a malfeasant employer than through its bank account, and no other way to compensate a victim of discrimination for heartache and anguish. The majority opinion, however, takes a narrow view of the Act and imposes undue technicalities on the Commission's ability to cure the social maladies of intentional discrimination. The Commission can no longer fully compensate a victim, nor sufficiently sanction those who engage in discrimination.

This Court was faced with a similar question under the Consumer Credit and Protection Act in *State by and through McGraw v. Imperial Marketing*, 203 W.Va. 203, 506 S.E.2d 799 (1998). We considered whether a circuit court could impose a $500,000.00 (suspended) civil penalty, when the Consumer Protection and Credit Act authorized a civil penalty of "no more than" $5,000.00 if a "defendant has engaged in a course of repeated and willful violations of this chapter." *See W.Va. Code*, 46A–7–111(2) [1974]. In *Imperial Marketing*, an unscrupulous marketer had mailed over 17,563 misleading solicitations to consumers over the space of a year and thereby "bilked West Virginia consumers

out of $975,389.02 through repeated, willful conduct[.]" 203 W.Va. at 219, 506 S.E.2d at 815. The marketer asserted that, under the Act, it should only be required to pay one $5,000.00 civil penalty for its "repeated and willful" misconduct, and not face the $500,000.00 penalty imposed by the circuit court.

This Court affirmed the circuit court's $500,000.00 penalty, and indicated that the law "clearly assumes that a civil penalty may be imposed for each, individual violation of the Consumer Credit and Protection Act." 203 W.Va. at 219–220 n. 6, 506 S.E.2d at 815–16 n. 6. (Starcher, J., concurring). We pointed out that other jurisdictions considering this question had consistently held that a civil penalty may be imposed for each individual violation of a consumer protection statute.[1]

I believe that similar reasoning applies to the instant case. The Legislature has authorized the Human Rights Commission to take "such affirmative action ... as in the judgment of the commission, will effectuate the purposes" of the Human Rights Act. *W.Va. Code*, 5–11–10 [1994]. We held, in *State Human Rights Comm'n v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77 (1975) and *State*

---

1. *See, e.g., State ex rel. Nixon v. Consumer Automotive Resources, Inc.*, 882 S.W.2d 717 (Mo.App. 1994) (consumer protection statute authorized civil penalty up to $1,000.00 per violation; court upheld $273,600.00 penalty for unlawful pyramid scheme involving 1,368 victims, holding penalties amounted to $200.00 per person); *State ex rel. Stenberg v. American Midlands, Inc.*, 244 Neb. 887, 509 N.W.2d 633 (1994) (statute authorized $2,000.00 civil penalty per violation; court upheld penalty of $788,000.00 where 788 persons paid money to an advance fee loan scam); *People v. Dollar Rent–A–Car Systems, Inc.*, 211 Cal.App.3d 119, 259 Cal.Rptr. 191 (1989) (each of the more than 500,000 misleading or deceptive car rental contracts could justify a separate penalty; therefore, the $100,000.00 penalty was "abundantly justified"); *State ex rel. Corbin v. United Energy Corp. of America*, 151 Ariz. 45, 725 P.2d 752 (Ariz.App.1986) (the state Consumer Fraud Act allowed court to impose a civil penalty of $55,000.00, or the statutory maximum of $5,000.00 for each of 11 consumers who were victims of fraud); *People v. Toomey*, 157 Cal. App.3d 1, 203 Cal.Rptr. 642 (1984) (civil penalties for fraudulent telephone solicitations should be imposed "per victim;" because the defendant committed at least 150,000 violations of two statutes, court was justified in imposing $150,000.00

in civil penalties); *United States v. Reader's Digest Association, Inc.*, 662 F.2d 955 (3d Cir.1981) (each individual mailing of a simulated check violated the Federal Trade Commission Act; while a civil penalty could be assessed of "not more than $10,000.00 for each violation," court upheld the imposition of $1,750,000.00 penalty for one bulk mailing of simulated checks to millions of consumers); *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wash.2d 298, 553 P.2d 423, 436 (1976) (court held that under Washington Consumer Protection Act, a civil penalty could be assessed for every violation of the Act, and that there could be multiple violations for each victim. The court stated that "[e]ach cause of action required respondent to prove divergent facts to establish a violation. Therefore, we hold that each cause of action is a separate violation of the consumer protection act."); *People v. Bestline Products, Inc.*, 61 Cal. App.3d 879, 132 Cal.Rptr. 767 (1976) (court upheld a $1,000,000.00 civil penalty, or approximately $330.00 per violation in a pyramid promotional scheme where 3,000 consumers lost $9,000,000.00, stating that the number of violations of the statute was to be determined by the number of persons to whom misrepresentations were made).

*Human Rights Comm'n v. Pearlman Realty Agency,* 161 W.Va. 1, 239 S.E.2d 145 (1977) that the Act allows the Commission to award "incidental" damages to make a victim of discrimination whole. However, in *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989), we held that because of a defendant/respondent's constitutional right to trial by jury, the Commission could only award a victim $1,000.00 in incidental damages. That "constitutionally acceptable" amount, adjusted for inflation, has grown to $3,277.45.

I believe that the statutory authority exists for the Commission to award a victim of discrimination $3,277.45 in incidental damages against each defendant responsible for the discrimination, until the victim has been made whole. Our holding in *Bishop Coal* was intended to protect each defendant's right to trial by jury; it was not intended to impose a limit on the victim's right to recover their losses. Accordingly, I believe the majority opinion could, and should, have given the Act a liberal interpretation so as to achieve its beneficent purposes.

Unfortunately, because the majority opinion interprets the Act as not containing the necessary statutory authority, the Legislature should amend the Act to allow the Commission to require each defendant to pay incidental damages to a victim of discrimina-

2.  The majority opinion, at Syllabus Point 3, indicates that the limit on awards of incidental damages "applies *per case* rather than per respondent." Applying this language, the Commission may have an alternate route for pursuing cases of discrimination under the Act, a route not fully considered by the respondents in the instant case. In instances where multiple respondents discriminate against a complainant, the Commission should consider filing individual complaints against each individual respondent. In this way, the Commission could recover incidental damages "per case rather than per respondent."

   This outcome was suggested in *State by and through McGraw v. Imperial Marketing,* 203 W.Va. at 219-220 n. 6, 506 S.E.2d at 815-16 n. 6 (Starcher, J. concurring), where an unscrupulous marketer argued that the Attorney General could only collect one $5,000.00 civil penalty per case, rather than per violation. In that case, 17,563 violations of the statute had occurred, and the Attorney General had originally sought a civil penalty for each solicitation. A concurring opinion characterized the marketer's argument as follows:

   I do not believe that [the marketer] has thought its argument through to its logical

tion.[2] A victim of discrimination must, of course, only be permitted to recover the damages which can be proven, and the defendant's share of the damages must be imposed within constitutional limitations. With such a change, the Act might once again become "strong medicine."

I therefore respectfully dissent.

conclusion. Assuming [the marketer's] argument was correct, to avoid the argument in this case the Attorney General would have had to file 17,563 separate lawsuits to maintain an action for civil penalties for each violation. Since this one lawsuit has generated enough paperwork to fill two bankers boxes, 17,563 lawsuits would likely have a similar result—thereby filling the courthouse with over 35,000 boxes of paper. Additionally, the Attorney General would, as in this one single case, be entitled to collect the attorneys' fees and costs incurred from the extra work necessary to the filing and prosecution of these extra lawsuits. This is to say nothing for the extra litigation costs that [the marketer] would have incurred, and would have added a considerable sum to the $87,815,000.00 fine that the circuit court could have imposed in the 17,563 lawsuits. I do not believe that the Legislature intended such a complicated or expensive result.

In the instant case, by holding that the Commission can impose incidental damages "per case rather than per respondent," it appears that the majority opinion did intend such a complicated and expensive result.